UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| HENRY HOLYFIELD and <br> TARA HOLYFIELD, <br><br> Plaintiffs, <br><br> v. <br><br> CHEVRON U.S.A., INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:20-CV-00165-JAR <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Motions to Dismiss filed by Defendants Syngenta Crop Protection, Syngenta Corporation, and Syngenta AG (collectively "Syngenta") (Docs. 26, 47) and Chevron U.S.A., Inc. ("Chevron"). (Doc. 31). The motions have been fully briefed, and oral arguments occurred on January 11, 2021.

**I.    BACKGROUND**

Plaintiff Henry Holyfield worked as an agricultural aircraft laborer from approximately 1965 to 1975. (Doc. 22 at ¶ 53). In this role, Mr. Holyfield was exposed to the pesticide paraquat as it was applied via crop dusting. (*Id.* at ¶ 54). Decades later, in 2015, Mr. Holyfield was diagnosed with Parkinson's disease. (*Id.* at ¶ 57). Mr. Holyfield and his wife allege that the exposure to paraquat caused or contributed to his development of Parkinson's disease. (*Id.* at ¶ 56). Plaintiffs further contend that Defendants designed, marketed, licensed, manufactured, distributed, and/or sold paraquat during the time Mr. Holyfield was exposed and should be held liable under Missouri law. (*Id.* at ¶ 8). Plaintiffs initially filed suit in state court in Missouri, but Defendants removed the case to this Court based on diversity jurisdiction. 28 U.S.C. § 1332. (Doc. 1). Plaintiffs' Amended Complaint (Doc. 22) includes the following counts:

**Count I**: Design Defect
**Count II**: Failure to Warn
**Count III**: Negligence
**Count IV**: Breach of Implied Warranty
**Count V**: Loss of Consortium

In their motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), both Syngenta and Chevron argue that all of Plaintiffs' claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). 7 U.S.C. § 136 *et seq.*

## II. LEGAL STANDARD

When ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), this Court must "accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). To survive the motions to dismiss, Plaintiffs' Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not necessary at this stage, Plaintiffs' obligation to provide the grounds of their entitlement to relief "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. Dismissal is warranted, moreover, if the Amended Complaint is "fatally flawed in [its] legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young*, 244 F.3d at 627 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

## III. STATUTORY CONTEXT

FIFRA was enacted in 1947, but Congress adopted substantial amendments as part of the Federal Environmental Pesticide Control Act of 1972. Pub. L. No. 92-516, 86 Stat. 973 (1972). These amendments "transformed FIFRA from a labeling law into a comprehensive regulatory

2

statute." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991 (1984).[1] Under FIFRA, as amended, all pesticides must be registered with the Environmental Protection Agency ("EPA") before being distributed or sold in the United States.

The EPA will register the pesticide if it determines, among other requirements, that the pesticide will not cause unreasonable adverse effects on the environment and its label is not misbranded. 7 U.S.C. § 136a(c)(5)(B-D). Unreasonable adverse effects on the environment include "any unreasonable risk to man." 7 U.S.C. § 136(bb). A label is misbranded if it contains any false or misleading information, does not have adequate instructions for use, or omits necessary warnings or cautionary statements. 7 US.C. § 136(q)(1). "Because it is unlawful under the statute to sell a pesticide that is registered but nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 438 (2005) (citing 7 U.S.C. § 136j(a)(1)(E)).

Critically, FIFRA establishes that States "*may regulate* the sale or use of any federally registered pesticide . . . in the State, but only if and to the extent the regulation does not permit any sale or use prohibited" by FIFRA. 7 U.S.C. § 136v(a) (emphasis added). States may not, however, "impose or continue in effect any requirements for labeling or packaging *in addition to or different from* those required" under FIFRA. 7 U.S.C. § 136v(b) (emphasis added). The core question on these motions to dismiss, a question which has been addressed by numerous courts in one form or another, is whether FIFRA preempts Plaintiffs' claims.

## IV.   DISCUSSION

No one can sell a pesticide in the United States until the pesticide has been registered with the EPA pursuant to FIFRA. Once the pesticide has been registered, all distribution must

---

[1] The parties extensively discuss the issue of whether the FIFRA amendments apply retroactively, since Mr. Holyfield was allegedly exposed to paraquat as early as 1965. Because this Court determines that FIFRA does not

conform with the labeling and packaging approved by the EPA. Defendants' argument in this case is straightforward and understandable: to hold them liable under Missouri law is fundamentally inconsistent with the EPA's registration of paraquat. Consistently relying on this general principle, Defendants contend that Plaintiffs' claims are expressly and impliedly preempted by FIFRA and that this Court should defer to the EPA pursuant to the doctrine of primary jurisdiction.

A. *Bates*

Given its central role in the parties' briefing, it makes sense to discuss *Bates* explicitly before addressing Defendants' specific arguments. In *Bates*, the Supreme Court squarely addressed the issue of FIFRA preemption and determined that States retain "ample authority to review pesticide labels to ensure that they comply with both federal and state labeling requirements." *Id.* at 442. *Bates* "overturned thirteen years of precedent during which pesticide companies enjoyed relative immunity from tort liability" by taking a "narrow view" of FIFRA preemption. Joseph Frueh, Comment, *Pesticides, Preemption, and the Return of Tort Protection*, 23 YALE J. REG. 299, 299-300 (2006). The Supreme Court relied on 7 U.S.C. § 136v(a), which provides that States "may regulate" the sale or use of federally registered pesticides. *Id.* at 442 ("Nothing in the text of FIFRA would prevent a State from making the violation of a federal labeling or packaging requirement a state offense, thereby imposing its own sanctions on pesticide manufacturers who violate federal law."). Accordingly, per *Bates*, FIFRA does not expressly preempt all state tort law liability relating to registered pesticides.

Since *Bates*, courts have generally held that FIFRA does not preempt state law claims (with some exceptions). *See Schoenhofer v. McClaskey*, 861 F.3d 1170 (10th Cir. 2017); *Indian

---

preempt Plaintiffs' claims even if applied retroactively, it need not decide this question at this juncture.

4

*Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207 (3d Cir. 2010); *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883 (8th Cir. 2005); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711 (E.D. Mo. 2019); *In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d 1085 (N.D. Cal. 2019); *Beyond Pesticides v. Monsanto Co.*, 311 F. Supp. 3d 82 (D.D.C. 2018); *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042 (W.D. Wis. 2018); *Rawa v. Monsanto Co.*, No. 4:17-CV-01252 AGF, 2017 WL 3392090 (E.D. Mo. Aug. 7, 2017); *Sheppard v. Monsanto Co.*, Civ. No. 16-00043 JMS-RLP, 2016 WL 3629074 (D. Haw. 2016); *Hardeman v. Monsanto Co.*, 216 F. Supp. 3d 1037 (N.D. Cal. 2016); *Carias v. Monsanto Co.*, No. 15-CV-3677 (JMA) (GRB), 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016). *But see Mirzaie v. Monsanto Co.*, No. CV 15-04361 DDP, 2016 WL 146421 (C.D. Cal. Jan. 12, 2016); *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177 (D. Kan. 2015); *Wilgus v. Hartz Mountain Corp.*, No. 3:12-CV-86, 2013 WL 653707 (N.D. Ind. Feb. 19, 2013). The cases finding FIFRA preempts state law claims have been routinely and convincingly criticized. *See Carias*, 2016 WL 6803780, at *6.

FIFRA's express preemption provision does provide that States "shall not impose or continue in effect any requirements for labeling or packaging *in addition to or different from* those required" under FIFRA. 7 U.S.C. § 136v(b) (emphasis added). The *Bates* holding carefully follows this language. Per *Bates*, a State rule is preempted if it is (1) a "requirement '*for labeling or packaging*'" and (2) "'*in addition to or different from* those required'" under FIFRA. *Bates*, 544 U.S. at 444 (emphasis in original) (quoting 7 U.S.C. § 136v(b)). The term "requirement," as used in 7 U.S.C. § 136v(b), "reaches beyond positive enactments, such as statutes and regulations, to embrace common law duties." *Id.* at 443. In disposing of the instant motions, this Court is required to follow the clear test for preemption outlined in *Bates*.

Defendants make two critical arguments regarding *Bates*. First, Defendants claim that *Bates* is factually distinguishable because the Supreme Court in *Bates* considered whether a

manufacturer's label should have included an efficacy warning, and the EPA takes no position on pesticide efficacy. *See Bates*, 544 U.S. at 440 ("Congress addressed this problem by authorizing EPA to waive data requirements pertaining to efficacy, thus permitting the agency to register a pesticide without confirming efficacy claims made on its label."). Defendants argue that the EPA has specifically affirmed paraquat's safety and assessed evidence regarding its connection to Parkinson's disease over decades of review.[2]

The problem for Defendants is that the Supreme Court did not limit its analysis in *Bates* to claims regarding pesticide efficacy. *See Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019) ("But *Bates* never stated that the state law claims at issue were not preempted because the EPA had waived efficacy review. Rather, the Court's discussion of preemption was about FIFRA in general."). In *Carias*, Monsanto Company made an identical argument, but the court found that "at least some passages in *Bates* seem to suggest that the Supreme Court would reject the argument that EPA's approval of a label preempts failure-to-warn claims concerning risks to human health." *Carias*, 2016 WL 6803780, at *4-5 (citing *Bates*, 544 U.S. at 450); *see also Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260, 270 (E.D.N.Y. 2019) ("[T]here is nothing in *Bates* – or in any of the Supreme Court's subsequent preemption cases – that conditions the scope of preemption on the status of efficacy-data review for the particular pesticide being challenged."). Consistent with these other courts, this Court sees no basis on which to limit *Bates* to cases regarding pesticide efficacy.

---

[2] As Defendants note, the EPA recently performed a systematic review of the literature on paraquat and determined "there is insufficient evidence to link registered paraquat products to any of the health outcomes investigated, including Parkinson's Disease, when used according to the label." EPA, *Paraquat Dichloride: Human Health*, *available at* http://www.epa.gov/ingredients-used-pesticide-products/paraquat-dichloride (last accessed April 12, 2021); *see* UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, MEMORANDUM, PARAQUAT DICHLORIDE: SYSTEMATIC REVIEW OF THE LITERATURE TO EVALUATE THE RELATIONSHIP BETWEEN PARAQUAT DICHLORIDE EXPOSURE AND PARKINSON'S DISEASE (June 26, 2019). The EPA also recognized, however, "potential risks to workers who apply paraquat or enter treated fields after application," and its most recent registration proposed to prohibit aerial application of paraquat for all uses except cotton desiccation. *Id.* Mr. Holyfield was allegedly exposed to paraquat during aerial application.

6

Perhaps more importantly, the plain text of FIFRA states that registration does *not* constitute an absolute defense to claims of mislabeling. 7 U.S.C. § 136a(f)(2) ("In no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter."). Defendants' interpretation of *Bates* and FIFRA is fundamentally incompatible with this language. *See Gucciardi v. Bonide Prods., Inc.*, 28 F. Supp. 3d 383, 392 (E.D. Pa. 2014) ("Moreover, to the extent that Defendants[] contend that the mere existence of the registration negates Plaintiffs' claims that the Product was dangerous, they are mistaken."). Under the clear text of FIFRA, the label is not the law.

Second, in response to *Bates*, Defendants rely heavily on subsequent Supreme Court precedent regarding the issue of preemption under other statutes. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013) (assessing preemption under Federal Food, Drug, and Cosmetic Act ("FDCA")); *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) (assessing preemption under FDCA); *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) (assessing preemption under Medical Device Amendments to FDCA). While this Court recognizes that these cases are broadly analogous and provide some valuable guidance, particularly *Riegel* given the comparable statutory preemption language, it cannot ignore the clear precedent established by *Bates* when assessing preemption under FIFRA, which adopts a distinct statutory scheme. Accordingly, this Court will proceed to address Defendants' motions by explicitly applying the framework laid out by the Supreme Court in *Bates*.

B. Express Preemption

Defendants argue that Plaintiffs' claims are expressly preempted by FIFRA. State laws which conflict with federal law are without effect pursuant to the Supremacy Clause. U.S. Const., Art. VI, cl. 2; *see Maryland v. Louisiana*, 451 U.S. 725, 745 (1981) ("It is basic to this

constitutional command that all conflicting state provisions be without effect."). There are two relevant types of preemption: express and implied.[3] Express preemption exists when Congress preempts state law "by so stating in express terms." *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). If complying with both state and federal law is a "physical impossibility," or the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," the state law is impliedly preempted. *Lankford v. Sherman*, 451 F.3d 496, 510 (8th Cir. 2006) (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983)).

When determining the scope of a statute's preemptive effect, the "purpose of Congress is the ultimate touchstone." *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963). This Court assesses preemption, however, under the "assumption that the historic police powers of the States [are] not to be superseded by the [federal law] unless that was the clear and manifest purpose of Congress." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) ("[W]e have long presumed that Congress does not cavalierly pre-empt state-law causes of action."). The Court also notes the Supreme Court's clear guidance in *Bates* when undertaking a preemption analysis at the pleadings stage: "To survive pre-emption, the state-law requirement need not be phrased in the *identical* language as its corresponding FIFRA requirement; indeed, it would be surprising if a common-law requirement used the same phraseology as FIFRA." *Bates* 544 U.S. at 454.

---

[3] There is also "field preemption," where Congress "creates a scheme of federal regulation so pervasive that the only reasonable inference is that it meant to displace the states." *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886 (8th Cir. 2005). Field preemption is clearly inapplicable here.

8

In Count I, Plaintiffs allege that the "unreasonably dangerous and defective condition" of paraquat caused or contributed to Mr. Holyfield's injuries. (Doc. 22 at ¶ 65). In Count IV, Plaintiffs claim that Defendants "breached the implied warranty because the paraquat was not reasonably fit for its intended use . . . and failed to function safely." (*Id.* at ¶ 87). The Supreme Court in *Bates* specifically held that the petitioners' "claim for defective design . . . are not pre-empted" because defective design duties do not constitute a requirement for labeling or packaging. *Bates*, 544 U.S. at 444. Chevron acknowledges this holding explicitly. (Doc. 32 at 9 ("To be sure, the Supreme Court held in *Bates* that FIFRA's *express* preemption provision does not preempt true design-defect claims because such claims do not impose requirements 'for labeling or packaging.'")). The Supreme Court also found that the manufacturers' obligations "to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.'" *Id.*

This Court is bound by both this clear precedent and the Eighth Circuit's holding in *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883 (8th Cir. 2005). In *Wuebker*, decided just months after *Bates*, the Eighth Circuit reversed the lower court and held that various state law product liability claims were not preempted by FIFRA. The Eighth Circuit specifically determined that the plaintiff's claims for "defective design, breach of implied warranty of fitness for a particular use, [and] breach of implied warranty of merchantability" were not preempted because "the rules underlying them do not require anything in the way of labeling or packaging." *Id.* at 887.[4] Because a finding of liability for defective design and for breach of an implied warranty under

---

[4] *Wuebker* specifically notes that these claims were not preempted "as pleaded." *Wuebker*, 418 F.3d at 887. Defendants allege that Plaintiffs' claims, as pleaded, are thinly veiled failure-to-warn arguments which seek to establish requirements for labeling or packaging. While the Court acknowledges some inartful pleading by Plaintiffs, namely the inclusion of generic failure-to-warn language in Count I, it finds that Count I "as pleaded" makes a defective design claim standing apart from Count II, which specifically alleges failure to warn. (Doc. 22 at ¶¶ 65-72). As in *Wuebker*, Plaintiffs' claims are only not preempted as plead.

Missouri law does not constitute a requirement for labeling or packaging, Counts I and IV are not expressly preempted by FIFRA.[5]

In Count II, Plaintiffs allege that Defendants distributed paraquat "without adequate instructions on safe use" and "without instructions or warnings that the paraquat was dangerous to health and life and caused disease." (Doc. 22 at ¶ 69). In Count III, Plaintiffs claim that Defendants "failed to use due care" and accordingly breached their duty towards Plaintiffs. Unlike the defective design claim, the Supreme Court held in *Bates* that the petitioners' "failure-to-warn claims are premised on common-law duties that qualify as 'requirements for labeling or packaging.'" *Bates*, 544 U.S. at 446.[6] Therefore, this Court must determine whether liability for failure-to-warn under Missouri law imposes an obligation in addition to or different from those required under FIFRA.

In *In re Dicamba Herbicides Litigation*, Judge Limbaugh of this district specifically rejected the argument that failure to warn claims were preempted by FIFRA. 359 F. Supp. 3d 711, 733-36 (E.D. Mo. 2019). While there are relevant distinctions between *In re Dicamba* and this case, including that the plaintiffs had relied on statements other than the labeling, these distinctions do not disturb the thrust of Judge Limbaugh's holding. As in *In Re Dicamba*, Defendants here have not identified any relevant language in the Amended Complaint or

---

[5] Syngenta argues that this element of *Bates* has been essentially overturned in *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013). (Doc. 51 at 12). Even if that were the case, and defective design claims could be interpreted as seeking to impose a requirement for labeling or packaging, Syngenta offers no evidence that Missouri law imposes duties in addition to or different from those required under FIFRA.

[6] Count III includes various allegations of negligence. This section specifically addresses the negligent failure to warn claims. (Doc. 22 at ¶ 76(d)-(g)). As to Plaintiffs' claim of negligence testing (*Id.* at ¶ 76(a)-(b)), the Supreme Court in *Bates* held that such claims do not attempt to impose a requirement for labeling or packaging. *Bates*, 554 U.S. at 444 ("Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing on their products, to market their products free of manufacturing defects, . . . plainly do not qualify as requirements for 'labeling or packaging.'").

10

precedent under Missouri law suggesting that Plaintiffs seek to impose requirements in addition to or different from those under FIFRA.

The Supreme Court made clear in *Bates* that FIFRA does not "pre-empt any state rules that are fully consistent with federal requirements." *Bates*, 544 U.S. at 452. Defendants have provided no evidence whatsoever that the Missouri common law duties Plaintiffs seek to enforce are inconsistent with FIFRA. Indeed, Defendants rely heavily on the Supreme Court's decision in *Bartlett* yet ignore its advice that "the proper inquiry calls for an examination of the elements of the common-law duty at issue." *Bartlett*, 570 U.S. at 492 (quoting *Bates*, 544 U.S. at 445). Without any briefing whatsoever on the scope of the applicable common-law duties,[7] this Court simply cannot find Counts II and III expressly preempted at the pleadings stage.

C. Implied Preemption

Defendants argue that any common law duty imposed under Missouri law is impliedly preempted by the EPA's registration of paraquat. A state law is impliedly preempted when it is "impossible for a private party to comply with both state and federal law, and when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [the relevant agency].'" *Wuebker*, 418 F.3d at 887 (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000)). "Impossibility preemption is a demanding defense." *Wyeth v. Levine*, 555 U.S. 555, 573 (2009).

---

[7] The Court takes notice that certain Missouri statutes formally adopt FIFRA standards. *See* MO. REV. STAT. § 281.101.2(2) ("It shall be unlawful to recommend for use, to use, or to supervise the use of any pesticide in a manner inconsistent with its labeling required by the labeling requirements of FIFRA, Missouri pesticide use act or Missouri pesticide registration act."). Defendants have provided no precedent or other evidence suggesting Missouri statutes or common law duties are broader than FIFRA.

To the extent Missouri law goes further than FIFRA, moreover, the Court notes clear guidance from *Bates* that such duties would only be preempted "to the extent of that difference." *Bates*, 544 U.S. at 453.

The Supreme Court did not directly address implied preemption in *Bates*, though the argument was before it. *Bates*, 544 U.S. at 435 ("In response, Dow filed a declaratory judgment action asserting that petitioners' claims were expressly or impliedly pre-empted by FIFRA."); *see also Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1281 (D. Haw. 2015) (That implied preemption was raised but ignored in *Bates* "indicates that the *Bates* Court rejected impossibility preemption *sub silentio*."). Defendants' implied preemption theory is "difficult – if not impossible – to square with" *Bates*. *In re Roundup Prods. Liab. Litig.*, 364 F. Supp. 3d 1085, 1088 (N.D. Cal. 2019); *see also Bates*, 544 U.S. at 458 (Thomas, J., concurring in part, dissenting in part) ("Today's decision thus comports with this Court's increasing reluctance to expand federal statutes beyond their terms through doctrines of implied pre-emption.").

The theory is also difficult to square with the plain text of FIFRA, which provides that states "may regulate" pesticides and that registration shall not constitute an absolute defense. 7 U.S.C. §§ 136v(a); 136a(f)(2). *Bates* makes perfectly clear that the EPA's registration of paraquat does not preclude States from holding manufacturers liable, as the "impositions of state sanctions for violating state rules that merely duplicate federal requirements" is consistent with FIFRA. *Bates*, 544 U.S. at 442. While numerous courts have considered the question, this Court is not aware of any precedent dismissing claims based on a theory of implied preemption under FIFRA. Instead, courts have generally recognized that EPA registration "does not represent a finding that the [product], as labeled, can never be deemed unsafe by later federal action, or as in this case, the application of state law." *Ansagay*, 153 F. Supp. 3d at 1283 (quoting *Wyeth*, 555 U.S. at 592 (Thomas, J., concurring in the judgment)).

Chevron does make one unique argument worthy of distinct consideration. Paraquat "is a discrete chemical compound consisting of a single molecule." (Doc. 32 at 11). Therefore, Chevron argues, paraquat cannot be redesigned by definition, and Plaintiffs' design defect claim

12

is impliedly preempted. *See Bartlett*, 570 U.S. at 484 ("[B]ecause of sulindac's composition, the drug is chemically incapable of being redesigned."); *see also Brinkley v. Pfizer, Inc.*, 772 F.3d 1133 (8th Cir. 2014) (holding design defect claims preempted by impossibility under FDCA). The Supreme Court held in *Bartlett* that the only way for the defendant to escape liability for sulindac would have been to strengthen the warning label. *Id.* Looking at the plain text of FIFRA, this Court sees no language indicating that design defect claims are expressly or impliedly preempted, even for single molecule pesticides. Instead, it is apparent that the statutory scheme established by Congress permits state law liability even for pesticides registered by the EPA, including those that cannot be redesigned.[8]

D. Primary Jurisdiction

Defendants argue that this Court should dismiss or stay this case pursuant to the doctrine of primary jurisdiction and in deference to the EPA's active consideration of paraquat's registration. The doctrine of primary jurisdiction "applies to claims 'properly cognizable in court that contain some issue within the special competence of an administrative agency.'" *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 909 (8th Cir. 2015) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)). "The contours of primary jurisdiction are not fixed by a precise formula." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005); *see* Louis L. Jaffe, *Primary Jurisdiction*, 77 HARV. L. REV. 1037, 1037 (1964) ("The so-called doctrine of primary jurisdiction cannot be stated in the form of a rule in terms either of its analytic structure of its incidence.").

One clear purpose of the doctrine is to promote "consistency and uniformity" in areas "not within the conventional experience of judges or cases requiring the exercise of

---

[8] Given this case is at the pleadings stage, this Court also believes that any dismissal based on such technical arguments would be premature.

administrative discretion." *Id.* (quoting *Access Telecomm. v. Southwestern Bell Co.*, 137 F.3d 605, 608 (8th Cir. 1998)). Ultimately, however, the doctrine is to be "invoked sparingly, as it often results in added expense and delay." *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 477 (8th Cir. 1988) (quoting *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir. 1984)).

This Court sees no convincing reason to dismiss or stay this case pursuant to the doctrine of primary jurisdiction. Plaintiffs seek to hold Defendants liable under Missouri tort law; this case will not turn on the results of the EPA's ongoing review of paraquat. *Ryan v. Chemlawn Corp.*, 935 F.2d 129 (7th Cir. 1991), is instructive. In *Ryan*, the Seventh Circuit reversed the district court's dismissal pursuant to the doctrine of primary jurisdiction in a products liability case concerning a registered pesticide. The court explained: "[T]he plaintiff has alleged state common law causes of action and remedies that are not dependent on any EPA provisions . . . . We fail to see how this claim is any different from the thousands of other personal injury suits filed annually alleging a design defect or inherently unsafe product that are regularly decided in the courts." *Id.* at 132; *see also Bates*, 544 U.S. at 452 ("[L]ay juries are in no sense anathema to FIFRA's scheme.").

Courts are particularly unlikely to invoke the doctrine of primary jurisdiction where plaintiffs seek damages as opposed to injunctive relief. "Courts refuse to defer jurisdiction if the plaintiff is seeking damages for injury to property or person, as this is the type of relief courts routinely consider." *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 857 F. Supp. 838, 843 (D.N.M. 1994). The relief Plaintiffs seek cannot be provided by the EPA.

Defendants argue that this Court should stay or dismiss this case because the EPA is reviewing potential connections between paraquat and Parkinson's disease. This Court is aware of no case since *Bates* in which a court has declined jurisdiction over a FIFRA-related claim

14

pursuant to the doctrine of primary jurisdiction. The results of the EPA's review of paraquat, moreover, will not dictate the success or failure of Plaintiffs' claims. Defendants essentially ask this Court to disregard the states' essential role in enforcing FIFRA and protecting its citizens from potentially dangerous pesticides, a role formally recognized by *Bates* and the EPA itself. *See* EPA, *About Pesticide Registration*, *available at* http://www.epa.gov/pesticide-registration/about-pesticide-registration (last accessed April 12, 2021) ("In general, states have primary authority for compliance monitoring and enforcing against illegal pesticide use."). This Court declines to invoke the sparingly used doctrine of primary jurisdiction to stay or dismiss Plaintiffs' state law claims.

E.  Other Arguments

Defendants make two arguments unrelated to FIFRA. First, Syngenta contends that Count IV (Breach of Implied Warranty) should be dismissed because only the purchaser of a product may bring a cause of action for breach of implied warranty under Missouri law. *See* MO. REV. STAT. § 400.2-318. Syngenta cites substantial precedent indicating that Plaintiffs' claims are not cognizable under Missouri law because Mr. Holyfield was not the purchaser of paraquat. *See Cowens v. Siemens-Elema AB*, 837 F.2d 817, 822 (8th Cir. 1988); *Leonard v. BASF Corp.*, No. 2:06-CV-33 ERW, 2006 WL 3702700, at *5 (E.D. Mo. Dec. 13, 2006).[9] Chevron adds that Count IV is duplicative of Plaintiffs' strict liability claim. *See Guilford v Boston Sci. Corp.*, No. 4:19-CV-00955-DGK, 2020 WL 1669279, at *4 (W.D. Mo. Apr. 3, 2020) ("Under Missouri law, the difference between strict liability and implied warranty is conceptual since the liability imposed for either is based in tort.").

---

[9] Members of a purchaser's household may bring a claim for breach of implied warranty under Missouri law. *Leonard*, 2006 WL 3702700, at *5. Mr. Holyfield's circumstances present the somewhat novel question of whether an employee who is also a member of the purchaser's household (Mr. Holyfield apparently worked for his father) can bring such a claim.

Second, Defendants argue that Count V (Loss of Consortium) should be dismissed for failure to plead identifiable damages. Under Missouri law, loss of consortium requires damages independent of those of the injured spouse. *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 113 (Mo. Ct. App. 2006) ("Damages are calculated separately from those that may have been awarded to the injured spouse and determined in relation to the unique damages suffered by the loss of consortium."); *Lear v. Norfolk and Western Ry. Co.*, 815 S.W.2d 12, 14 (Mo. Ct. App. 1991). Syngenta also notes that Missouri law does not permit punitive damages for loss of consortium claims. *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1337 (8th Cir. 1988); *Oliver v. SL Western Lounge, LLC*, No. 4:17-CV-1556 JCH, 2017 WL 2955181, at *2 (E.D. Mo. July 11, 2017). Count V of Plaintiffs' Amended Complaint does not identify special damages attributable to Mrs. Holyfield and demands punitive damages.

The Court disagrees with Plaintiffs' assessment of these arguments as raising "hyper-technical pleading deficiencies," particularly as to Count IV. (Doc. 42 at 15). The Court will dismiss Counts IV and V without prejudice while providing Plaintiffs an opportunity to seek leave to amend their complaint. The Court notes that a motion for leave to file an amended complaint may be denied on the basis of futility. *Zutz v. Nelson*, 601 F.3d 842, 851 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)) ("Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6).'").

## V. CONCLUSION

Plaintiffs seek to hold Defendants liable under Missouri law for injuries allegedly caused by Mr. Holyfield's exposure to paraquat. Defendants argue that FIFRA preempts any finding of

16

liability, especially because the EPA has supposedly determined that paraquat exposure does not cause Parkinson's disease. In *Bates*, the Supreme Court held that States may continue to impose liability for injuries relating to pesticides so long as they do not establish requirements in addition to or different from FIFRA. At this early stage of litigation, Defendants have not conclusively demonstrated that any finding of liability under Missouri law would necessarily impose a requirement for labeling or packaging in addition to or different from FIFRA.

Accordingly,

**IT IS HEREBY ORDERED** that the Motions to Dismiss filed by Syngenta (Docs. 26, 47) and Chevron (Doc. 31) are **GRANTED in part** and **DENIED in part**. Counts IV and V of Plaintiffs' Amended Complaint are hereby **DISMISSED without prejudice**. Defendants' Motions to Dismiss are denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiffs shall have up to **fifteen (15) days** from the date of this Memorandum and Order to file a Motion for Leave to File Amended Complaint.

Dated this 12th day of April, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE